UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 17 CR 639-1 |
| SAMIR FAKHOURI | Judge Thomas M. Durkin |

**MEMORANDUM ORDER AND OPINION**

Defendant Samir Fakhouri filed a motion pursuant 18 U.S.C. § 3582 seeking a reduction of his sentence and an order granting his immediate release from prison, or in the alternative, a reduction of his sentence that includes home confinement as a condition of supervised release. R. 122. That motion is denied.

**Background**

Mr. Fakhouri, 57, pled guilty to a conspiracy to possess with intent to distribute and distribute 800 grams of heroin. R. 97. On March 3, 2020, the Court sentenced Mr. Fakhouri to 30 months imprisonment and 18 months of supervised release. R. 114. Mr. Fakhouri self-surrendered on June 16, 2020, *see* R. 122-2, and his projected release date is July 25, 2022. Mr. Fakhouri has served less than one-third of his anticipated term of incarceration.

Mr. Fakhouri is incarcerated at the Satellite Camp of the Administrative United States Penitentiary in Thomson, Illinois. There are approximately 1,343 inmates at USP Thomson and 88 inmates at the camp. As of this writing,

approximately 26 inmates and 10 staff members have active cases of COVID-19.[1] The associate warden of the prison advised the government that one inmate at the Satellite Camp has tested positive, but warned that it may have been a false positive. *See* R. 128 at 11. The associate warden also advised the government that two inmates inside the special housing unit at the Satellite Camp have tested positive. *Id.* No deaths have been reported at Thomson as a result of COVID-19.

## Analysis

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant, "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the Bureau of Prisons ("BOP") filing a motion on the defendant's behalf. The government concedes that Mr. Fakhouri has exhausted his administrative remedies and that the BOP has not pursued his request for early release.

In determining whether a sentence reduction under § 3582 is appropriate, courts are to consider: (1) the factors set forth in 18 U.S.C. § 3553(a); (2) whether "extraordinary and compelling reasons" warrant a reduction in sentence; and (3) whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of establishing his entitlement to relief under this provision. *See United States v. Gold*, 2020 WL 2197839, *1 (N.D. Ill. May 6, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)).

---

[1] *See* https://www.bop.gov/coronavirus/

In determining what constitutes extraordinary and compelling reasons to modify a person's sentence, courts consider the guidance contained in the U.S. Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. The Application Notes describe extraordinary and compelling reasons as including medical conditions, age, and family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The notes also include a catch-all provision: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). *Id.* cmt. n.1(d). A "vast majority" of district courts find that U.S.S.G. § 1B1.13, is "not binding but is, rather, helpful guidance" when considering compassionate release requests by inmates. *United States v. Cardena*, 2020 WL 2719643, at *3 (N.D. Ill. May 15, 2020) (internal citation omitted); *accord United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'").

**A. Extraordinary and Compelling Reasons**

Against this backdrop, courts have found that an extraordinary and compelling reason to reduce an inmate's sentence can arise if the inmate's underlying health condition makes him particularly vulnerable to serious health complications should he contract COVID-19. In letters to the Court, Mr. Fakhouri and members of his family describe the physical and mental health conditions they believe warrant a

reduction in Mr. Fakhouri's sentence. The Court reviews those conditions below, mindful of the pandemic and the hardships it has caused.

Breathing Issues: Mr. Fakhouri claims to have always had difficulty breathing and to have used his son's inhaler before becoming incarcerated. *See* R. 122-3. According to his medical records, after Mr. Fakhouri self-surrendered to the BOP, he told a medical provider that he had respiratory problems and was previously diagnosed with asthma. R. 125 at 10. The provider ordered a chest x-ray and asked Mr. Fakhouri to use a peak flow meter, which he did "with very poor effect." *Id*. at 10. Mr. Fakhouri saw another medical provider a month later. *Id*. at 3-4. The provider said that Mr. Fakhouri's lungs were "clear," that he did not have "labored breathing," and that an inhaler was "not medically indicated at this time." *Id*. Mr. Fakhouri's medical records therefore suggest that his breathing is under control. In any event, even if Mr. Fakhouri has asthma, that condition is not identified in current CDC guidance as one that increases the risk of severe illness due to COVID-19; rather, the guidelines provide that people with moderate to severe asthma "might" be at an increased risk for severe illness from COVID-19.[2] There is no indication that Mr. Fakhouri's asthma is moderate or severe, and several courts in this Circuit have held that controlled asthma did not warrant release. *See, e.g.*, *United States v. Forrest*, 2020 WL 5110473, at *2 (N.D. Ill. Aug. 31, 2020) (thirty-eight-year-old inmate with controlled asthma did not present extraordinary and compelling reasons for

---

[2]  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

compassionate release); *United States v. Council*, 2020 WL 3097461, at *6 (N.D. Ind., June 11, 2020) (forty-nine-year-old inmate with controlled asthma did not present an extraordinary and compelling reason for release).

Blood Pressure: Mr. Fakhouri also claims to have high blood pressure. According to his daughter, before Mr. Fakhouri surrendered to the BOP, an at-home blood pressure monitor allegedly recorded his blood pressure at 147/93, which is higher than normal. R. 122-3. Mr. Fakhouri's medical records, however, show that his blood pressure readings during the months he has been incarcerated have fluctuated between normal and elevated levels.[3] R. 125 at 50-51. Moreover, the records do not show that Mr. Fakhouri has been diagnosed with hypertension, which the CDC says is a condition that may put a person at an increased risk for severe illness from COVID-19.

Mental Health and Substance Abuse: According to Mr. Fakhouri and his family, Mr. Fakhouri's mental health has deteriorated and he suffers from depression and substance abuse problems. *See* R. 122-3; R. 122-4; R. 122-5. The Court is sympathetic to Mr. Fakhouri's mental well-being, but the CDC does not identify depression, anxiety, or substance abuse as conditions that cause an increased risk of developing severe symptoms with COVID-19. Moreover, several courts in this Circuit have found that depression and anxiety are not "extraordinary and compelling"

---

[3] The Court notes that a blood pressure reading taken on September 14, 2020 recorded Mr. Fakhouri's blood pressure at 150/86, which the CDC considers high. *See* FAKHOURI 49. But a reading taken a month later, on October 22, 2020, recorded Mr. Fakhouri's blood pressure at 126/78, which the CDC considers normal. *Id.*

5

reasons that justify a sentence reduction. *See, e.g., United States v. Gross*, 2020 WL 7029297, at *3 (S.D. Ind. Nov. 30, 2020); *United States v. Hughes*, 2020 WL 6905533, at *5 n.4 (S.D. Ind. Nov. 23, 2020); *United States v. Bowling*, 2020 WL 4915665, at *4 (N.D. Ind. Aug. 21, 2020). This Court agrees and encourages Mr. Fakhouri to seek mental health and substance abuse counseling at Thomson.

Conditions at USP Thomson and Presence of COVID-19: Mr. Fakhouri and his family also contend that the difficult living conditions and presence of COVID-19 at Thomson have made Mr. Fakhouri's time in prison more difficult than necessary. R. 122 at 9; R. 122-4 at 2. But this Court and many others around the country have found that the mere existence of the COVID-19 pandemic in the country generally, or in a particular correctional facility, does not constitute an "extraordinary and compelling reason" to reduce a sentence. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Capo*, 2020 WL 5994500, at *1 (N.D. Ill. Oct. 9, 2020); *Gold*, 459 F. Supp. 3d at 1119; *United States v. Miller*, 2020 WL 2093370, at *2 (C.D. Ill. May 1, 2020). A contrary finding would imply that all inmates should be released, which is neither appropriate nor feasible.

Age and Ailing Wife: Mr. Fakouri says that his age, 57, and desire to care for his wife, who suffers from lupus, constitute extraordinary and compelling reasons justifying release. *See* R. 122 at 8. Turning first to Mr. Fakhouri's age, although the CDC's current guidelines indicate that the risk for severe illness from COVID-19

increases with age, the greatest risk posed for severe illness is among those aged 85 or older. Mr. Fakhouri's age, then, is not a sufficient basis on its own to reduce his sentence. Furthermore, although the Court appreciates Mr. Fakhouri's desire to care for his ailing wife during these challenging times, that desire is not an extraordinary and compelling reason warranting a sentence reduction—especially because Mr. Fakhouri has three adult children who could presumably look after her, even if they are not financially sound. *See* R. 122-5. Although each inmate's familial situation is different, several courts in this Circuit have reached similiar conclusions. *See United States v. Minney*, 2020 WL 7398714, at *4 (S.D. Ind. Dec. 17, 2020) (collecting cases).

<u>Weight Issues</u>: Finally, Mr. Fakhouri points to his weight as a basis for release. The CDC's current guidelines state that obesity is a health condition that poses an increased risk of severe illness from COVID-19. Obesity is defined as having a body mass index ("BMI") of 30 or higher.[4] In June 2020, shortly after Mr. Fakhouri surrendered to the BOP, Mr. Fakhouri weighed 202 pounds and had a BMI of 31.6. R. 125 at 37. Four months later, in October 2020, Mr. Fakhouri weighed 194.2 pounds and had a BMI of 30.4. *Id*. at 3. Accordingly, at least at that point, Mr. Fakhouri was obese for purposes of CDC guidelines. The government concedes as much.[5] But Mr.

---

[4] *See* https://www.cdc.gov/obesity/adult/defining.html

[5] The government caveats this concession by noting that Mr. Fakhouri's health records demonstrate that his obesity is not a condition from which he is unlikely to recovery. The Court agrees because Mr. Fakhouri has lost weight since becoming incarcerated. *See* R. 125 at 37, 51-52. But for reasons explained in this opinion, the Court will assume without deciding that Mr. Fakhouri is obese and that his obesity demonstrates that there is an extraordinary and compelling reason supporting his release.

7

Fakhouri's medical records do not indicate whether he has been weighed since October 2020. It is therefore unclear whether he remains at the same weight. Nevertheless, because Mr. Fakhouri's most recent weight qualified him as obese, the Court will assume without deciding that he is obese for purposes of this motion and that his obesity demonstrates that there is an extraordinary and compelling reason supporting his release.

**B. Section 3553(a) Factors**

Even if assuming Mr. Fakhouri's weight establishes an extraordinary and compelling reason for release, the factors in 18 U.S.C. § 3553(a) counsel against it.[6] Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 468 F. Supp. 3d 996, 1000 (N.D. Ill. 2020).

The Court first addresses "the nature and circumstances of the offense" and the "kinds of sentences available." 18 U.S.C. § 3553(a)(1), (3), (4). The charged offense carried a potential statutory mandatory minimum sentence of five years of

---

[6] In addition to the § 3553(a) factors, Mr. Fakhouri asks the Court to consider the factors that the BOP reviews when determining which federal inmates should be released to home confinement due to COVID-19. *See* R. 122 at 11. While the BOP is the institution with the expertise to consider some of those factors—such as the inmate's risk and needs assessment score—many of the factors that Mr. Fakouri asks this Court to review overlap with considerations discussed elsewhere in this opinion, including the inmate's crime of conviction, the danger he poses to the community, and his vulnerability to COVID-19.

imprisonment. R. 97 ¶ 7(a). Mr. Fakhouri was eligible for safety valve relief, and the parties agreed that the Court had discretion to impose a sentence within the advisory Guideline range of 46 to 57 months instead of the five-year mandatory minimum. From any perspective, then, his sentence of 30 months was lenient considering the nature of his crime—conspiring to distribute 800 grams of heroin.

Since Mr. Fakhouri's original sentence was more than appropriate, reducing it now would deemphasize the seriousness of his crime and disrespect the principles of justice. *See* 18 U.S.C. § 3553(a)(2)(A). The fact that Mr. Fakhouri has served only a small fraction of his sentence also means that his early release could diminish the deterrent effect of his original sentence. *Id*. § 3553(a)(2)(B). One of the Court's primary concerns at sentencing was general deterrence. *See* R. 127 at 78-79. Heroin is a highly addictive and dangerous drug that has destroyed countless lives. People must know that dealing heroin comes with a steep penalty. Releasing an inmate who conspired to distribute 800 grams of heroin and who has only served a small portion of his sentence would send the wrong message to the community.

Specific deterrence also counsels against a reduction. Mr. Fakhouri committed the offense later in life, but that does not diminish the pain his family has been forced to endure as a result of his actions. Mr. Fakhouri's sentence needs to help ensure that he does not repeat the same miscalculation that led him to prison in the first place.

The next factor the Court considers is the risk of recidivism. 18 U.S.C. § 3553(a)(2)(C). On the one hand, Mr. Fakhouri and others said at sentencing that what he did was out-of-character and a mistake. They emphasized that he would not do it

9

again given his age. But as the Court pointed out, Mr. Fakhouri was 53 years old when he was arrested; accordingly, this argument would be more persuasive if he committed the crime when he was younger. The recidivism factor therefore cuts in both directions.

The Court also considers the "history and characteristics of the defendant." *See id.* § 3553(a)(1). Mr. Fakhouri points out that he cooperated with the government after being arrested. *See* R. 122 at 14. But the Court already considered Mr. Fakhouri's cooperation at his sentencing hearing and found it to be a mitigating factor that warranted a sentence below the advisory Guideline range. *See* R. 127 at 74-75. The Court sees no reason to further reduce Mr. Fakhouri's sentence at this time.

The last factor requires the Court to consider "the need for the sentence imposed to provide the defendants with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Mr. Fakhouri has not made any argument that his health conditions could be better managed outside of prison. In fact, Mr. Fakhouri's medical records show that he has been able to see medical providers on several occasions since his self-surrender in June. *See* R. 125 at 47-52. And as mentioned, Mr. Fakhouri received a chest x-ray only a few days after reporting respiratory problems. *See id.* at 10, 79. In short, Mr. Fakhouri has not made any showing that his release is necessary to more effectively address his health conditions.

Therefore, the factors in § 3553(a) suggest that a reduction in Mr. Fakhouri's sentence would be inappropriate.

**Conclusion**

Even assuming one or more of Mr. Fakhouri's health problems constitute an "extraordinary and compelling" reason for relief in the context of the COVID-19 pandemic, those problems are outweighed by the seriousness of his crime, the need to demonstrate respect for justice, and the importance of deterring future criminal conduct. Accordingly, Mr. Fakhouri's motion, R. 122, is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 28, 2020